UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SARAH ORTIZ and VICTOR MALLH, Individually and on Behalf of All Others Similarly Situated,<br><br>       Plaintiffs,<br><br> v.<br><br>CAMBRIDGE ANALYTICA, LLC,<br><br>       Defendant. | No. 1:18-cv-2901<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 AND § 350**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiffs Sarah Ortiz and Victor Mallh ("Plaintiffs"), individually and on behalf of all others similarly situated, by their undersigned counsel, allege the following upon personal knowledge as to their own acts and upon information and belief based upon the investigation conducted by counsel as to all other matters.

## NATURE OF THE ACTION

1. Plaintiffs bring this action individually and as a class action against Cambridge Analytica LLC ("Cambridge Analytica") for its improper collection, use and sale of private data and information acquired from 50 million users of social media giant, Facebook, Inc. ("Facebook"). On March 17, 2018, the *New York Times* and the *Guardian* reported that a Cambridge University psychologist and researcher who worked for Cambridge Analytica exfiltrated the personal data of 50 million Facebook users under false pretenses. This unauthorized data mining data breach allowed millions of Facebook users' personal information to be disclosed for commercial purposes without their consent, and wound up in the hands of the political and election consulting firm, Cambridge Analytica. The data included Facebook users' full names,

phone numbers, email addresses, physical addresses, and their ages, interests, pages they've liked, groups they belong to, physical locations, political affiliation, relationships, and photos.

2. The data breach allowed Cambridge Analytica to target Plaintiffs and other Facebook users by exploiting the private social media activity of the American electorate, a practice that underpinned its work on President Trump's campaign in 2016. Cambridge Analytica surreptitiously collected data from Facebook users through the use of a personality quiz app called *thisisyourdigitallife*, designed by a Cambridge researcher Aleksandr Kogan ("Kogan"), that required users to login to that app using their Facebook credentials. Kogan's app claimed to be collecting personal information from Facebook users for academic purposes. In reality, the information was being harvested to identify the personalities and psychology of American voters, with the ultimate goal of influencing their behavior and affecting their vote in the 2016 Presidential campaign and election. While only 270,000 American Facebook users installed the app and took the personality quiz, Cambridge Analytica was ultimately able to secretly harvest personal information of more than 50 million Facebook users by accessing the data of every one of the app users' Facebook friends.

3. This class action complaint is filed on behalf of all New York citizens who were members of Facebook and whose personal information was obtained on Facebook by Cambridge Analytica from January 1, 2014 through the present. This lawsuit seeks to right the wrongs created by Cambridge Analytica's deceptive business practices, false advertising, and blatant disregard and misuse of sensitive, personal data belonging to Plaintiffs and all class members.

4. Cambridge Analytica's deceptive business practices, including its use of class members' personal information without their permission, made the company millions of dollars, but harmed millions of Americans. Plaintiffs' and class members' damages are ongoing, as their

private, personal information remains in Defendant's possession, without adequate protection, and is also in the hands of those who obtained it for its political and commercial value, without class members' consent.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d) because the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, there are more than 100 class members, and diversity of citizenship exists between at least one member of the proposed class and defendant. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

2. Although Cambridge Analytica possesses information demonstrating the exact size of the class, Plaintiffs believe that at least 50 million people have been harmed as a result of defendant's misconduct detailed herein.

3. This Court has personal jurisdiction over defendant because it maintains an office and conducts business in this District, maintains sufficient contacts in this jurisdiction, and committed tortious acts in this jurisdiction.

4. Venue is proper in this District under 28 U.S.C. § 1391(c) because defendant is a firm that does business in and maintains sufficient contacts in this jurisdiction and is subject to personal jurisdiction in this District.

5. Venue is also proper under 28 U.S.C. § 1391(a) because defendant maintains offices in this District and a substantial part of the events and omissions giving rise to the claims occurred in this District.

## THE PARTIES

6. Plaintiff Sarah Ortiz ("Ortiz") is a citizen of the state of New York. Ortiz has held a Facebook account since approximately 2008. Ortiz was targeted with political ads while using Facebook during the 2016 presidential campaign and election.

7. Plaintiff Victor Mallh ("Mallh") is a citizen of the state of New York. Mallh has held a Facebook account since approximately 2006. Mallh was targeted with political ads while using Facebook during the 2016 presidential campaign and election

8. Defendant Cambridge Analytica is a limited liability company organized under the laws of the State of Delaware, with offices located in New York City and Washington, D.C. Cambridge Analytica is a subsidiary of and was created in 2013 by its British parent company, Strategic Communication Laboratories ("SCL"), and Alexander Nix ("Nix"), Cambridge Analytica's former CEO.

## SUBSTANTIVE ALLEGATIONS

*Background of Cambridge Analytica*

9. Cambridge Analytica is a privately held political consulting firm that claims to offer tools to identify American voters and influence voter behavior. Cambridge Analytica has been financially supported by Robert Mercer ("Mercer"), a Republican donor and hedge fund magnate, and Stephen K. Bannon, a former adviser to President Trump. Mercer helped the firm finance a $1.5 million pilot test of its psychographic profiling-based messaging in Virginia's 2013 gubernatorial election on behalf of Republican candidate Ken Cuccinelli. Cambridge Analytica was hired by President Trump's 2016 election campaign and by Ted Cruz during his presidential campaign.

10. On December 31, 2013, SCL formally organized Cambridge Analytica as a U.S.-based entity. Cambridge Analytica began its efforts to mass data mining for purposes of selling that information to American political campaigns looking to influence or change votes. In September 2016, Nix described the company as being built upon a model based on "hundreds and hundreds of thousands of Americans" filling out personality surveys, generating a "model to predict the personality of every single adult in the United States of America."

11. On March 18, 2018, Christopher Wylie ("Wylie"), one of Cambridge Analytica's former research directors who helped found Cambridge Analytica and worked there until late 2014, exposed the company's unlawful and deceptive business practices, including creating so-called "psychographic profiles" of millions of Facebook users by gathering information from users' profiles, tracking users' Facebook "likes", and collecting data through use of an online survey in 2014, in an effort to influence voters during the 2016 Presidential campaign and election. Cambridge Analytica collected Facebook users' personal information for profit without the users' consent. In a March 17, 2018 *New York Times* article, *How Trump Consultants Exploited the Facebook Data of Millions*, Wylie said of Cambridge Analytica's leaders: "Rules don't matter for them. For them, this is a war, and it's all fair."

*Cambridge Analytica Surreptitiously Harvested Facebook Users' Personal Information*

12. Facebook reports more than $1 billion per quarter in advertising revenue. Advertisers invest big money in Facebook because the platform allows advertisers to skillfully target ads based on personal information users share. To that end, it is in Facebook's interest to encourage third party developers to utilize Facebook so that it can collect more information about users' online and offline activities.

5

13. Third party developers may add Facebook-related features to their websites or services through Facebook's Software Development Kit ("SDK"). Through the SDK, developers are able to interact with Facebook in certain ways, including permitting visitors to login to a website or app using their Facebook credentials. When a person logs in to an app using his or her Facebook credentials, information about the person's online activities are transmitted to Facebook. Facebook then benefits by collecting additional behavioral information that can be later used in targeted advertising.

14. In 2014, Cambridge Analytica took advantage of Facebook's platform. Cambridge Analytica needed as much information as possible about American voters in order to compete in the lucrative new world of political data, and sell that information for a profit to political campaigns seeking to influence or change votes. In June 2014, Kogan began working with Cambridge Analytica's British-based parent company SCL, which is a military contractor.

15. Kogan founded Global Science Research in 2014, after Cambridge University's psychology department refused to allow him to use its own pool of data for commercial purposes. Kogan, through Global Science Research, built his own app, called "*thisisyourdigitallife*," which was a personality quiz. *thisisyourdigitallife* used Facebook's SDK Facebook login option, so people who wished to take the personality quiz had to enter their Facebook credentials.

16. The app would scrape some private information from the app user's Facebook profiles and from those of their friends. The approach was based on a technique pioneered at Cambridge University by data scientists who claimed it could reveal more about a person than even their parents or romantic partners knew. The idea was to map personality traits based on what people had liked on Facebook, and then use that information to target audiences with digital

ads.  Kogan's ultimate goal was to get as close to every American Facebook user in the dataset as possible.

17. Beginning in 2014, Kogan used Amazon's crowdsourcing marketplace Mechanical Turk (MTurk), an online marketplace that allows developers to hire people to do certain types of work for small fees, to access a large pool of Facebook profiles, hoovering up tens of thousands of individuals' demographic data – names, locations, birthdays, genders – as well as their Facebook "likes", which offer a range of personal insights.  Kogan recruited MTurk users by paying them about one dollar to take his personality questionnaire that gave access to their Facebook profiles.  Each recruit had to download the *thisisyourdigitallife* app using their Facebook login credentials before they could collect payment.  Global Science Research said the app would "download some information about you and your network … basic demographics and likes of categories, places, famous people, etc. from you and your friends."  For each person Kogan recruited on MTurk, he harvested information about their friends, exponentially increasing the size of the dataset.  For each person who took the survey through *thisisyourdigitallife* (estimated to be about 270,000), Cambridge Analytica even had access to their private messages on Facebook.

18. Kogan assured Facebook and his app's users that he was collecting information for academic purposes, not for a political data firm.  Facebook routinely allows researchers to have access to user data for academic purposes – and users consent to this access when they create a Facebook account.  But Facebook prohibits this kind of data to be sold or transferred "to any ad network, data broker or other advertising or monetization-related service."  This is precisely what Kogan did when he provided the information to a political consulting firm.

19. The Facebook data was then used to generate sophisticated models of each user's personalities using the so-called "big five" personality traits and characteristics – openness,

conscientiousness, extraversion, agreeableness, neuroticism (known as the "OCEAN" scale). Cambridge Analytica's central offering to US politicians is to enable them to use the OCEAN scale in shaping highly targeted campaign messages.

20.     Using these techniques, Cambridge Analytica claims to have "provided the Donald J. Trump for President campaign with the expertise and insight that helped win the White House."[1] Both parties wound up winning – Trump was elected president and Cambridge Analytica was paid handsomely for its hijacking of highly personal information.

21.     In late-2015, the Global Science Research survey abruptly shut down.

***Cambridge Analytica's Improper Data Collecting Was Exposed and the Company Admitted to the Misconduct***

22.     After the *Guardian*[2] reported on Cambridge Analytica's work on U.S. elections in late-2015, Facebook issued a statement that "[M]isleading people or misusing their information is a direct violation of our policies and we will take swift action against companies that do, including banning those companies from Facebook and requiring them to destroy all improperly collected data," a Facebook spokesman said in a statement to the *Guardian*.[3]

---

[1]     *Donald J. Trump for President*, CAMBRIDGE ANALYTICA, available at https://political.production.k8s.e.cambridgeanalytica.org/casestudies (last visited Mar. 28, 2018).

[2]     Harry Davies, *Ted Cruz using firm that harvested data on millions of unwitting Facebook users*, THE GUARDIAN (Dec. 15, 2015), https://www.theguardian.com/us-news/2015/dec/11/senator-ted-cruz-president-campaign-facebook-user-data (last visited Mar. 29, 2018)

[3]     Harry Davies, *Facebook told me it would act swiftly on data misuse – in 2015*, THE GUARDIAN (Mar. 26, 2018), https://www.theguardian.com/commentisfree/2018/mar/26/facebook-data-misuse-cambridge-analytica (last visited Mar. 29, 2018).

23.     The fallout of the reports of Cambridge Analytica's misconduct was swift. Facebook, already under fire for facilitating the spread of disinformation, suspended Cambridge Analytica from its platform. British officials sought a warrant to search the company's office. Lawmakers on both sides of the Atlantic demanded answers. "They should be barred from any US election or government work until a full investigation can be conducted," Rep. Joaquin Castro (D-Texas), a member of the House Intelligence Committee, tweeted.

24.     In a statement to the *New York Times*, Cambridge Analytica acknowledged that it had acquired the data, though it blamed Kogan for violating Facebook's rules and said the company had deleted the information as soon as it learned of the problem two years ago. The *New York Times*, however, reported that the data, or at least copies, may still exist.[4]

25.     Facebook issued a statement on March 23, 2018 saying that in 2015, when it learned that Kogan's research had been turned over to Cambridge Analytica, violating Facebook's terms of service, it removed Kogan's app from the site. It said it had demanded and received certification that the data had been destroyed.

26.     Since the news reports have surfaced concerning Cambridge Analytica's improper data collection of Facebook users, the company is facing intertwined investigations by British Parliament and government regulators into allegations that it performed illegal work on the "Brexit" campaign.

---

[4]     Matthew Rosenberg, *et al.*, *How Trump Consultants Exploited the Facebook Data of Millions*, N.Y. TIMES (Mar. 17, 2018), https://www.nytimes.com/2018/03/17/us/politics/cambridge-analytica-trump-campaign.html (last visited Mar. 29, 2018).

27. In addition, the Justice Department's special counsel, Robert S. Mueller III, has demanded the emails of Cambridge Analytica employees who worked for the Trump team as part of his investigation into Russian interference with the 2016 Presidential election

## **CLASS ACTION ALLEGATIONS**

28. Plaintiffs bring this class action pursuant to Fed. R. Civ. P. 23(a), (b)(1) and (b)(3) on behalf of the following class (the "Class"):

> All New York citizens with Facebook accounts whose personal information was obtained by Cambridge Analytica without authorization or the user's express permission from January 1, 2014 through the present. Excluded from the Class is defendant, its parent, subsidiaries and affiliates, their directors and officers and members of their immediate families; also excluded are any federal, state or local governmental entities, any judicial officers presiding over this action and the members of their immediate family and judicial staff, and any juror assigned to this action.

29. Members of the Class are so numerous that joinder of all members would be impracticable. Plaintiffs estimate that there are approximately 50 million members of the Class.

30. Questions of law and fact are common to all the members of the Class that predominate over any questions affecting only individual members, including:

   a. Whether Cambridge Analytica improperly obtained Plaintiffs' and Class members' personal information by misrepresenting the terms of the app's and Facebook's privacy policy in connection with Cambridge Analytica's collection of data;

   b. Whether Cambridge Analytica's conduct and business practices violated New York law, including N.Y. GBL §§ 349 and 350.

   c. Whether Plaintiffs and other Class members have damages and, if so, the extent of such damages and/or the nature of the equitable injunctive relief or statutory damages to which each Class member is entitled.

31.     Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs have no interests antagonistic to those of the Class, and defendant has no defenses unique to Plaintiffs.

32.     Plaintiffs will protect the interests of the Class fairly and adequately, and Plaintiffs have retained attorneys experienced in complex class action litigation.

33.     A class action is superior to all other available methods for this controversy because:

    a.     The prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

    b.     The prosecution of separate actions by the members of the Class would create a risk of inconsistent or varying adjudications with respect to the individual members of the Class, which would establish incompatible standards of conduct for defendant;

    c.     Defendant acted or refused to act on grounds that apply generally to the Class; and questions of law and fact common to members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT I
**(Violation of the N.Y. GBL § 349)**

34.     Plaintiffs incorporate and re-allege all of the foregoing paragraphs.

35.     At all times relevant herein, the New York General Business Law ("N.Y. GBL") was in effect. N.Y. GBL § 349 prohibits materially misleading, consumer-oriented business acts or practices that cause injury to persons in New York state.

36. Defendant was and is doing business in the state of New York and thus is subject to New York law for the incidents described in this action.

37. While conducting business acts, Cambridge Analytica knowingly made deceptive and materially misleading representations about the nature of its survey-taking app, the nature of the data being collected, and the purposes for which the data was being collected and used.

38. Defendant's acts and omissions of material fact in collecting data were materially false and misleading.

39. As a result of defendant's acts, Plaintiffs and members of the Class were damaged by defendant's conduct and are entitled to monetary damages, statutory damages, treble damages and appropriate injunctive relief and other relief, as described herein

40. Defendant's conduct described herein constitutes a violation of N.Y. GBL §349.

## COUNT II
### (Violation of N.Y. GBL § 350)

41. Plaintiffs incorporate and re-allege all of the foregoing paragraphs.

42. At all times relevant herein, the New York General Business Law was in effect. N.Y. GBL § 350 prohibits false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in New York.

43. Defendant was and is doing business in New York state, and has business offices in New York, and thus is subject to New York law for the incidents described in this action.

44. Defendant's false advertisements and material misrepresentations to Facebook users about the type of data, and the purpose for which the data was being collected, were false and misleading in a material respect and thus defendant has violated N.Y. GBL § 350.

45. These material misrepresentations permitted defendant to collect and harvest Facebook users' personal data, including highly sensitive information, and in some instances their

private messages and photos, for purposes of profiling and targeting them with tailored messaging and advertising designed to influence and manipulate their behavior and voting practices.

46. Plaintiffs and the other members of the Class have been injured by defendant's false advertising and misstatements.

47. Defendant's conduct described herein constitutes a violation of N.Y. GBL §350.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

A. Certify this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, appoint Plaintiffs as the Class representatives, and appoint the undersigned as Class counsel;

B. Order defendant to pay Plaintiffs and other members of the Class all actual, consequential, statutory and/or treble damages in an amount to be determined at trial, as well as any applicable interest;

C. Award Plaintiffs' counsel its reasonable attorneys' fees and costs;

D. Award such and other injunctive and declaratory relief as is necessary, or enter other appropriate equitable relief;

E. Award in favor of Plaintiffs and the Class such other relief as may be just and proper.

## JURY DEMAND

Plaintiffs, on behalf of themselves and the Class, hereby demand a trial by jury.

Dated: April 2, 2018　　　　　　　　**GARDY & NOTIS, LLP**

By: *s/ Meagan Farmer*
Mark C. Gardy
James S. Notis
Meagan Farmer
Tower 56
126 East 56th Street, 8th Floor
New York, New York 10022
Tel: 212-905-0509
Fax: 212-905-0508
mgardy@gardylaw.com
jnotis@gardylaw.com
mfarmer@gardylaw.com

Lee Squitieri
Stephen J. Fearon, Jr.
**SQUITIERI & FEARON, LLP**
32 East 57th Street, 12th Floor
New York, New York 10022
Tel: 212-421-6492
Fax: 212-421-6553
lee@sfclasslaw.com
stephen@sfclasslaw.com

*Counsel for Plaintiffs*